IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–01169–WJM–KMT

GUSTAVO COLÓN,

    Plaintiff,

v.

BLAKE R. DAVIS - WARDEN,

    Defendant.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This matter is before the court on "Defendant's Motion for Summary Judgment" (Doc. No. 70 [Mot.], filed May 10, 2013), to which Plaintiff filed his response on June 7, 2013 (Doc. No. 76 [Resp.]). Defendant did not file a reply. This motion is ripe for recommendation and ruling.

### I. STATEMENT OF CASE AND UNDISPUTED FACTS

Plaintiff alleges Defendant, the Warden of the United States Penitentiary in Florence, Colorado, where Plaintiff is incarcerated, has violated his Fifth Amendment Due Process rights. (*See* Doc. No. 4 [Compl.] at 2–3.) Specifically, Plaintiff alleges on December 16, 2008, Defendant placed a freeze on his trust fund account without giving Plaintiff adequate notice. (*Id.* at 4.) Plaintiff also alleges on December 16, 2008, Defendant placed Plaintiff on mail and telephone restriction and has refused to allow Plaintiff to correspond with or communicate with

anyone other than his immediate family members. (*Id.* at 5–6.) Plaintiff also alleges Defendant has failed to provide a six-months' review to have the restrictions removed in violation of his due process rights. (*Id.* at 4–6.)

The following undisputed facts are taken from Plaintiff's Complaint, the Motion, and the Response.[1]

1. In 1972, at age eighteen, Plaintiff was convicted and sentenced to 30 to 60 years in prison for murder. *See U.S. v. Souffront*, 338 F.3d 809, 816 (7th Cir. 2003).

2. Also in 1972, Plaintiff became the leader of the Latin Kings street gang. *Id.*

3. As an inmate at the Illinois Department of Corrections, Plaintiff directed and controlled the narcotics-related activities of the gang. *Id.*

4. In 2000, Plaintiff was convicted of charges pertaining to a gang-related conspiracy that was carried out while he was incarcerated, from 1995 to 1997. *Id.*

5. Plaintiff was found guilty on charges of knowingly and intentionally using a telephone in causing and facilitating the commission of a felony; conspiring to distribute cocaine, heroin, and marijuana; and distributing cocaine. *Id.*; Ex. 1.

---

[1]The court notes that Plaintiff did not follow District Judge William J. Martínez's Practice Standards, which require "[a]ny party opposing the motion for summary judgment . . . [to] provide a 'Response to Movant's Material Facts' in its brief, admitting or denying the asserted material facts set forth by the movant." *See* Judge Martinez's Practice Standards, § 3.E.5. Nor has the defendant filed a reply to the response that contains "[a] separate section titled 'Reply Concerning Undisputed Facts,' containing any factual reply which movant cares to make regarding the facts asserted in movant's motion to be undisputed." *See id.*, §3.E.8.a.

6. Plaintiff has been serving his sentence for these crimes at the Administrative Maximum facility in Florence, Colorado ("ADX") since August 2000. (Mot., Ex. 2 at 2.)

7. Plaintiff maintained his control of the Latin Kings through telephone calls and personal visits with his wife, Marisol. *Souffront*, 338 F.3d at 816.

8. He made telephone calls almost every evening to his wife, who would often conference in other members of the conspiracy. *Id.*

9. His wife served as his advisor, informing him of the distribution activities of the conspiracy and facilitating communications between Plaintiff and his key subordinates. *Id.*

10. In 2008, while serving his sentence at the ADX, Plaintiff was placed on telephone and mail restrictions, limiting his communications to immediate family members, due to security concerns arising from evidence that Plaintiff was using his phone and mail privileges at the ADX for the furtherance of criminal gang activities involving the Latin Kings. (Compl. at 5, 6, 9, 12, 13.)

11. Mail and telephone use is regulated—and not unlimited—for all inmates. (*See, e.g.*, Mot., Ex. 3 at 1–5; Ex. 4 at 1–4, 9–11; Ex. 5 at 1–10; Ex. 6 at 3–5.)

12. Administrative restrictions also were placed on Plaintiff's inmate account, such that incoming funds would be placed on administrative hold until cleared of Latin King gang activity, and all funds in his account that were determined to originate from individuals associated with Latin King activity would be encumbered. (Compl. at 9, 13.)

13. At the ADX, there are limitations on the use of inmate accounts, and all inmates' accounts may be encumbered. (*See, e.g.*, Ex. 7 at 19–20, 67–70; Ex. 8 at 1–3.)

14. The Bureau of Prison's ("BOP") rationale for the administrative restrictions relate to Plaintiff's affiliation with the Latin Kings gang and the prison's effort to prevent Plaintiff from engaging in Latin King gang activities at the prison. (Compl. at 12, 13.)

15. These administrative restrictions were put in place in conjunction with a criminal investigation of charges that community-based Latin King gang facilitators were providing funds and information to incarcerated members of the gang in furtherance of criminal activities. (Compl. at 9.)

16. A review of Plaintiff's account indicated that he received funds from individuals in direct relation to Latin King activities. (*Id.*)

## III. LEGAL STANDARDS

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## IV. ANALYSIS

### A.     *Mail and Telephone Communications*

Plaintiff alleges (1) he has been on telephone and mail restrictions from December 16, 2008, which limits his communications to immediate family members only; (2) he was denied

"the right to keep a normal relationship with other family members"; and (3) the restrictions are indefinite. (Compl. at 5–6.) Plaintiff alleges the failure of the defendant to conduct any required reviews of the restrictions on his communications and the indefinite nature of the restrictions constitute a violation of his due process rights. (*Id.*)

"To state a due process claim, [Plaintiff] must allege two elements: (1) that a recognized liberty or property interest has been interfered with by the Defendant[], and (2) that the procedures attendant to that deprivation were not constitutionally sufficient." *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1170 (D. Colo. 2010) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). The first step in the court's due process analysis involves identifying the existence of a liberty interest sufficient to require procedural protections prior to its deprivation. In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that an inmate's liberty interest is protected under the Due Process Clause if restraints or conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . . ." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485–87).

The Tenth Circuit has identified the following non-dispositive factors that may be relevant to determining whether conditions of confinement implicate a protected liberty interest: (1) whether the classification or conditions relate to and further a legitimate penological interest, such as safety or rehabilitation; (2) whether the conditions of placement are extreme; (3) whether the classification or placement increases the duration of confinement; and (4) whether the

placement is indeterminate. *DiMarco v. Wyoming Department of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007) (also acknowledging that "any assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts"). "[T]he proper approach is a fact-driven assessment that accounts for the totality of conditions presented by a given inmate's sentence and confinement." *Rezaq v. Nalley*, 677 F.3d 1001, 1012 (10th Cir. 2012).

Defendant argues that the restrictions relate to and further a legitimate penological interest. (Mot. at 10, ¶ 1.) Specifically, Defendant argues the BOP records that Plaintiff attached to his complaint show that the rationale for the restrictions relate to Plaintiff's affiliation with the Latin Kings gang and the prison's effort to prevent Plaintiff from engaging in Latin King gang activities at the prison. (*Id.* [citing Compl. at 12 and 13].) The Notice of Inmate Restriction attached to Plaintiff's Complaint describes the rationale for imposing the restrictions as "security concerns present due to use of phone & mail communication privileges for furtherance of criminal gang activities involving Latin King gang, from ADX Florence." (Compl. at 12.) The plaintiff does not argue or submit evidence to the contrary. Therefore, the court finds there is a legitimate penological interest in imposing the restrictions, and this factor weighs against finding a liberty interest.

Defendant avers that the restrictions are not extreme. (Mot. at 10, ¶ 2–3.) Again, At the summary judgment stage, courts have not concluded that conditions imposed at ADX are atypically extreme. *See, e.g., Jordan v. Fed. Bureau of Prisons*, 191 F. App'x 639, 651–52 (10th Cir. 2006) (finding no liberty interest in conditions imposed during five-year administrative

confinement in the ADX control unit); *Saleh v. Fed. Bureau of Prisons*, Nos. 05–cv–02467–PAB–KLM, 06–cv–01747–PAB–KLM, 07–cv–00021–PAB–KLM, 2010 WL 5464294 (D. Colo. Dec. 29, 2010) (no liberty interest in conditions imposed in the ADX general population unit); *Georgacarakos v. Wiley*, No. 07–cv01712–MSK–MEH, 2010 WL 1291833, at *11–13 (D. Colo. March 30, 2010) (finding no liberty interest in conditions imposed in the ADX general population unit); *Rezaq v. Nalley*, No. 07–cv–02483–LTB–KLM, 2010 WL 5157317, at *14 (D. Colo. Aug. 17, 2010) (conditions in the ADX general population unit do not implicate a liberty interest); *Allmon v. Wiley*, No. 08–cv–01183–MSK–CBS, 2011 WL 4501941, at *15 (D. Colo. Aug. 25, 2011) ("Given the lack of any substantial differences between conditions of confinement in H Unit and in ADX general population and administrative segregation units, Mr. Allmon was not subjected to conditions that impose atypical and significant hardship and thus give rise to a constitutionally-protected liberty interest."), *adopted by* 2011 WL 4501937 (D. Colo. Sep. 27, 2011). Plaintiff does not argue to the contrary or submit evidence otherwise. Therefore, the court finds that this factor weighs against finding that Plaintiff has a liberty interest.

Defendant also argues, and Plaintiff does not dispute, that the restrictions do not increase the duration of his confinement. (Mot. at 11, ¶ (3).) Therefore, the court also finds that this factor weighs against a liberty interest.

Finally, Defendant argues that the restrictions are indefinite, but that periodic reviews of the restrictions have been conducted. (*Id.*, ¶ (4).) In support of this argument, Defendant points to the Notice of Inmate Restrictions attached to Plaintiff's Complaint. (*Id.* [citing Compl. at

12].) The Notice is effective January 26, 2010 and advises Plaintiff that the ACX will "Continue on current restrictions, 6 mo. Review." (*Id.*) There is no indication from this Notice, however, when or if the six-month reviews actually occurred, and Defendant has provided no evidence that the reviews have occurred. Plaintiff, in his Complaint and his Response to Defendant's Motion, avers that the reviews have not taken place and that he has reviewed the central files at ADX and found no documents showing any reviews have been conducted. (*See* Compl. at 4–6; Resp., ¶¶ 1.A., 2.A.; Resp. at 7, Doc. No. 78 at 2.)

Other courts that have addressed this issue in the context of placement at ADX have found that incarceration in ADX's general population is not indeterminate because inmates receive periodic reviews. See *Georgacarakos*, 2010 WL 1291833, at *13 (finding that the existence of the Step–Down Unit Program provides a definite benchmark for plaintiff's exit from ADX even if it took almost thirteen years to get accepted to the program under BOP's period review process); *Georgacarakos v. Wiley*, No. 07–cv–01712–MSK–MEH, 2011 WL 940803, at *11 (D. Colo. March 16, 2011) (same); *Rezaq v. Nalley*, No. 07–cv–02483–LTB–KLM, 2010 WL 5157317, at *13 (D. Colo. Aug. 17, 2010) (where plaintiff received twenty-eight periodic reviews, even though Plaintiff felt the reviews were meaningless, factor weighed against finding Plaintiff's had a liberty interest); *Silverstein v. Fed. Bureau of Prisons*, No. 07–cv–02471–PAB–KMT, 2011 WL 4552540, at *4, *16 (D. Colo. Sept. 30, 2011) (where plaintiff received regular reviews, even though plaintiff disputed meaningfulness of the reviews, no genuine issue of material dispute that confinement not indefinite). Here, however, there is a genuine dispute as to a material fact whether <u>any</u> six-month periodic reviews have taken place.

Accordingly, this factor weighs in favor of finding that the restrictions implicated a liberty interest. *See Toevs v. Reid*, 646 F.3d 752, 757 (10th Cir. 2011) (finding fourth factor determinative where indefinite placement that lasted for years established a protected liberty interest), *amended on reh'g by Toevs v. Reid*, 646 F.3d 752 (10th Cir. 2011). The court recognizes that only one of the *DiMarco* factors weights in favor of Plaintiff's liberty and due process claim, but nevertheless cannot find for the defendants where there is no evidence any review process has been followed.

Normally, the court would address the second step of the procedural due process analysis, *i.e.*, the adequacy of the process. *See Matthews*, 744 F. Supp. 2d at 1170. However, Defendant has not made any argument in this regard.

The Defendant has failed to fulfill its burden of demonstrating there is absence of evidence to support Plaintiff's case, and Defendant's motion for summary judgment on Plaintiff's claims regarding mail and telephone communications should be denied.

### B.     *Inmate Trust Fund Account*

Defendant also argues he is entitled to summary judgment on Plaintiff's claim regarding his inmate trust fund account. In his Complaint, Plaintiff states that (1) since December 16, 2008, he has not had access to his funds and (2) "when money is sent to [him] by [his] family it is placed on HOLD-FROZEN by the Warden." (Compl. at 4.)

The Tenth Circuit has held that the seizure and forfeiture of currency as <u>contraband</u> is a typical incident of prison life, and is not a significant property interest deprivation. *Steffey v. Orman*, 461 F.3d 1218, 1222 (10th Cir. 2006). Defendant argues that Plaintiff has failed to show

the restrictions on his trust fund account are an "atypical and significant hardship." (Mot. at 12.) However, this exact argument made by Defendant was rejected in this court's Recommendation on Defendant's Motion to Dismiss and District Judge William J. Martínez's Order adopting the Recommendation. (*See* Doc. No. 51 at 9–11; Doc. No. 51.)  As this court explained in its Recommendation, in this case Plaintiff alleges <u>all</u> of his funds have been held and frozen–even money sent to him by family members–since December 2008.  The court also explained that, at the motion to dismiss stage, it was impossible for the court to determine that any or all of the funds being held are contraband, and that there is no indication in the Complaint or the attached records that any of the funds have been released after a determination they are not contraband. Defendant has failed, even on summary judgment, to submit any evidence regarding these issues.

The court also explained in the Recommendation that " 'to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' " *Steffey*, 461 F.3d at 1223 (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  In *Steffey*, the court was able to conclude that the property interest involved–only fifty dollars–was insignificant.  Here, however, this court explained it could not make such a determination at the motion to dismiss stage because Plaintiff alleges his inmate funds have been frozen since 2008, and thus it is possible Plaintiff's property interest is significant.  In its Motion for Summary Judgment, Defendant still has failed to submit any

evidence regarding Plaintiff's trust fund account.[2] Additionally, Defendant has failed to submit any evidence that all of the funds that have been frozen are contraband, and therefore the court cannot find that Plaintiff does not have a legitimate claim of entitlement to the money.[3]

Defendant has failed to show that there is no genuine dispute as to any material fact, Fed. R. Civ. P. 56(a), and Defendant's motion for summary judgment on this claim should be denied.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that "Defendant's Motion for Summary Judgment" (Doc. No. 70 ) be **DENIED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A

---

[2] Rather, Defendant directs the Court to a November 9, 2009 "Response to Inmate Request to Staff Member" attached to Plaintiff's Complaint. (*See* Compl. at 9.) The Response to Inmate Request merely advises Plaintiff, "Financial deposits made to your inmate account indicate you received funds from individuals in direct relation to Latin Kings activities." (*Id.*) The Response to Inmate Request does not provide any detail regarding Plaintiff's trust fund account.

[3] Defendant argues that the four *DiMarco* factors apply to Plaintiff's property interest claim. However, this court is unable to locate any case in which the *DiMarco* factors were used to analyze an inmate's property interest. Even if *DiMarco* did apply in the context of a property interest claim, the defendant's argument would fail, as explained *supra*, because the defendant has not submitted any evidence that any reviews have been conducted regarding the restrictions placed on Plaintiff's inmate account.

general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 30th day of September, 2013.

BY THE COURT:

*Kathleen M Tafoya*
Kathleen M Tafoya
United States Magistrate Judge